861 F.2d 721
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David SLONE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-3973.
 United States Court of Appeals, Sixth Circuit.
 Nov. 8, 1988.
 
 Before KEITH, NATHANIEL R. JONES and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff-appellant appeals from the district court's judgment affirming the Secretary's denial of his claim for social security disability benefits. Because we find that the Secretary's residual functional capacity assessment is supported by substantial evidence, we affirm the district court's judgment.
 
 I.
 
 2
 The plaintiff-appellant, David Slone, worked at U.S. Steel's Lorain, Ohio plant from July of 1954 until his alleged disability onset date of August 27, 1984. He started as a laborer, then drove a truck for the company for twenty-four years, until 1982. After a nine month layoff period, Slone returned to work as a pipe loader and continued this job until August of 1984.
 
 
 3
 On August 27, 1984, Slone experienced severe chest pain while performing his job as a pipe loader. He was admitted to St. Joseph's Hospital in Lorain where Dr. M.G. Salka diagnosed him as having suffered from an "acute myocardial infarction." J.App. at 67. Slone's condition was "stable and compensated" when he was released from the hospital on September 1, 1984. Id. Dr. Salka's prognosis was "[f]air with therapy," and he instructed Slone to avoid strenuous activity. Id.
 
 
 4
 In September of 1984, Slone was admitted to Elyria Memorial Hospital for a heart catherization study. The study, which was performed by Dr. Salka, revealed significant narrowing of Slone's right coronary artery (20-30% narrowing), left anterior descending artery (80-90% narrowing in two locations), and circumflex artery (50% narrowing in one location and 75% narrowing in another). Id. at 90 These results convinced Dr. Salka that Slone was a candidate for double coronary bypass surgery to the left anterior descending artery and circumflex artery. Id. The surgery was performed without complications on October 1, 1984, and Slone was discharged from the hospital in satisfactory condition on October 8, 1984. Id. at 96.
 
 
 5
 In January of 1985, Slone underwent a treadmill exercise test at St. Joseph's Hospital. After exercising for seven minutes, he achieved 100% of his predicted maximum heart rate. Id. at 119. His blood pressure and heart rate responses were normal and the test provoked no chest pain or arrythmia. Id. Given these results, Dr. Salka concluded that Slone possessed "[a]verage physical capacity for a patient who had recent coronary graft surgery." Id. Slone admits that his chest pain "disappeared" in the months immediately following his surgery. Appellant's Br. at 14. However, as time passed, Slone again experienced chest pain which he now alleges to be anginal in nature.
 
 
 6
 On November 29, 1984, after his surgery but prior to the treadmill test, Slone applied to the Social Security Administration ("SSA") for disability insurance benefits. In his application, Slone claimed that he was disabled due to a variety of impairments including: (1) his then recent heart attack; (2) acute and chronic lumbar myascitis; (3) diabetes mellitus; (4) a breast tumor; (5) a kidney infection; (6) arthritis; (7) recurring prostate gland problems; and (8) 98% deafness in his left ear accompanied by 40-50% deafness in his right ear. J.App. at 24. Slone claimed a disability onset date of August 27, 1984--the date on which he suffered the heart attack. The SSA denied the application upon initial consideration and upon reconsideration. Slone then requested a hearing before an administrative law judge ("ALJ") which was held on September 30, 1985.
 
 
 7
 On October 30, 1985, the ALJ issued his decision denying Slone's application for disability benefits. On the basis of the evidence presented, the ALJ found that Slone suffered from "severe coronary artery disease, diabetes mellitus, degenerative joint disease, as well as a profound left sided hearing loss and a severe right sided ... hearing loss," but concluded that he did not have an impairment or combination of impairments listed in, or equivalent to one listed in, the applicable regulations. Id. at 13. The ALJ further concluded that while Slone suffered from a severe impairment, his pain and physical limitations did not preclude him from performing his past relevant work as a truck driver or from engaging in other light work activity. Id. at 14. The ALJ's decision denying benefits became the final decision of the Secretary when the Appeals Council approved the ALJ's decision on January 14, 1986.
 
 
 8
 An appeal of the Secretary's decision was taken to the United States District Court for the Northern District of Ohio, Eastern Division, where Slone's case was referred to Magistrate Joseph W. Bartunek pursuant to 28 U.S.C. Sec. 636(c) (1982). On September 23, 1987, the magistrate issued a memorandum opinion affirming the Secretary's decision in all respects. A timely appeal of the magistrate's decision then came to this court.
 
 II.
 
 9
 Slone contends that the Secretary erred in concluding that his impairments do not meet or exceed a cardiac impairment as listed in the Social Security Act disability regulations, 20 C.F.R. Part 404, Subpt. P., App. 1 (1988). In addition, Slone argues that substantial evidence does not support the Secretary's determination (1) that he possesses the physical capacity to perform his past relevant work as a truck driver and (2) that he retains the residual functional capacity to perform light work other than his past relevant work.
 
 A.
 
 10
 The listing of disabling impairments in the disability regulations includes "ischemic heart disease with chest pain or [sic] cardiac origin as described in [section] 4.00E" when accompanied by specified objective medical evidence of a disabling cardiac condition. 20 C.F.R. Part 404, Subpt. P, App. 1, Sec. 4.04. The regulations state that:
 
 
 11
 Chest pain of cardiac origin is considered to be pain which is precipitated by effort and promptly relieved by sublingual nitroglycerin or rapid-acting nitrates or rest. The character of the pain is classically described as crushing squeezing, burning, or oppressive pain located in the chest. Excluded is sharp, sticking or rhythmic pain. Pain occurring on exercise should be described specifically as to usual inciting factors (kind and degree), character, location, radiation, duration, and responses to nitroglycerin or rest.
 
 
 12
 Id. at Sec. 4.00(E) (emphasis in original). When the claimant has undergone heart or vascular surgery, the regulations provide that "[a]ssessment of the magnitude of the impairment following surgery requires adequate documentation of the pertinent evaluations and tests performed following surgery ..." and that "[w]here treadmill exercise tests ... have been performed following the surgical procedure, the results of these tests should be obtained." Id. at Sec. 4.00(J). The regulations state that, when available, treadmill test results are the "primary basis" for making a disability determination, but provide that "the significance of findings of a treadmill exercise test must be considered in light of the clinical course of the disease which may have occurred subsequent to performance of the exercise test." Id. at Sec. 4.00(G)(4).
 
 
 13
 Appellant argues that the reports submitted by Drs. Wagner and Bescak, J.App. at 148 and 163, and the report of his physical therapist, Mary Saloka Morrison, id. at 164, demonstrate that the clinical course of his disease changed after the treadmill test was performed. However, while these reports describe Slone's post-treadmill chest pains as anginal in nature, none of them sets forth objective medical evidence as is required by section 4.04 of the disability regulations. In order to support an automatic finding of disability under the regulations, the claimant must submit an objective test consistent with the requirements of section 4.04 demonstrating that he has chest pain of cardiac origin. See Knipe v. Heckler, 755 F.2d 141 (10th Cir.1985). Since Slone has not presented such objective medical evidence, he has not shown that his physical impairments meet or exceed a listed cardiac impairment.
 
 B.
 
 14
 In his next argument, Slone contends that that the Secretary's decision that he possesses the physical capacity to return to his past relevant work as a truck driver is not supported by substantial evidence. We agree.
 
 
 15
 In making the determination that Slone could perform his prior work as a truck driver, the ALJ stated:
 
 
 16
 [T]he claimant described his past work as a truck driver as requiring no lifting and carrying. He also indicated that the majority of the time was spent in the seated position. The claimant retains the residual functional capacity to lift up to 20 pounds maximum with frequent lifting or carrying of objects weighing up to 10 pounds as well as the ability to sit, stand and walk for significant periods of time and the ability to perform some pushing and pulling of arm and leg controls. Thus, the claimant clearly retains the residual functional capacity to return to his past work ... as a truck driver.
 
 
 17
 J.App. at 13. The ALJ ignored Mary Morrison Salka's report which indicated that Slone's "heart rate increased rapidly with low level upper extremity exercise ..." and stated that Slone suffered from "chronic, significant low back pain...." Id. at 164 (emphasis added). The ALJ also ignored Slone's testimony that he gave up his job as a truck driver in favor of a pipe loading job because of the low back pain that the constant sitting caused him. Id. at 27 and 33. Given the medical and other evidence of low back pain and its limiting effects, we conclude that the Secretary's decision that Slone can return to his previous work as a truck driver is not supported by substantial evidence.
 
 C.
 
 18
 Finally, Slone challenges the Secretary's alternative finding that he possesses the residual functional capacity to perform light work other than his past work as a truck driver.
 
 
 19
 Light work is defined as work which involves:
 
 
 20
 [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 
 
 21
 20 C.F.R. Sec. 404.1567(b) (1988).
 
 
 22
 At the hearing, appellant stated that he could stand for at least an hour, walk for forty-five minutes or better, sit for forty-five minutes, and lift ten to fifteen pounds. He also stated that he regularly exercises on a bike and occasionally goes fishing. J.App. at 33-34. Although the evidence indicates that his heart rate increases rapidly with low level upper extremity exercise, J.App. at 164, he appears capable of "some pushing and pulling of arm ... controls" in addition to the other activities required to perform light work. Therefore, while substantial evidence does not support the Secretary's decision regarding Slone's ability to return to his truck driving job, we conclude that substantial evidence does support the Secretary's conclusion that Slone possesses the residual functional capacity to perform other light work.
 
 III.
 
 23
 For the above-stated reasons, we hereby AFFIRM the Secretary's denial of disability benefits.